# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | | |
|---|---|---|
| TOMMY L. JACKSON, JR., | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 4:14 CV 2116 ERW/DDN |
| | ) | |
| TROY STEELE, | ) | |
| | ) | |
| Respondent. | ) | |

## REPORT AND RECOMMENDATION

This action is before the court upon the petition of Missouri state prisoner Tommy L. Jackson, Jr., for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The matter was referred to the undersigned United States Magistrate Judge for a report and recommended disposition pursuant to 28 U.S.C. § 636(b)(1). For the reasons set forth below, the undersigned recommends the denial of the petition.

## I. BACKGROUND

Petitioner Jackson alleges the following facts in support of federal habeas corpus relief. On March 23, 2010, he pled guilty to second-degree murder, first degree assault, and two counts of armed criminal action. (ECF No. 1 at 1). On May 26, 2010, a St. Louis County Circuit Court judge sentenced him to fifteen years in prison for the assault and concurrent terms of life in prison for the remaining three counts. *Id. See also State of Missouri v. Tommy L. Jackson*, 08SL-CR08128-01 (St. Louis County Circuit Court, May 26, 2010); (ECF No. 6, Ex. A at 13-48).

Jackson sought post-conviction relief in the circuit court under Missouri Supreme Court Rule 24.035, claiming that his defense counsel (1) misrepresented the degree to which he had contacted petitioner's witnesses; (2) promised petitioner he would receive no more than a fifteen-year sentence while instructing him not to mention this promise

during the plea; (3) failed to inform petitioner before the sentencing hearing that the trial court intended to impose a life sentence, which petitioner alleged would have induced him to withdraw his plea; and (4) petitioner was never advised by defense counsel or the circuit court that by pleading guilty he was waiving his right to challenge how the police obtained evidence against him. (ECF No. 6, Ex. A at 58-65, 71-100). The circuit court denied petitioner's motion for post-conviction relief, without an evidentiary hearing. (*Id.* at 105-11).

Petitioner appealed the denial of post-conviction relief, arguing two grounds: (1) his trial counsel misled him when he told petitioner he had actually interviewed the witnesses when he had not done so; and (2) the circuit court failed to make specific findings of fact and conclusions of law on whether defense counsel told petitioner to lie about whether he promised petitioner he would receive a sentence of ten to fifteen years. The Missouri Court of Appeals affirmed the denial of relief on ground (1), stating:

> During [petitioner's] plea hearing, the motion court asked [petitioner] whether he had a chance to give his plea counsel a list of witnesses to speak to in reference to any possible defense [petitioner] might have. [Petitioner] replied yes, and then plea counsel addressed the court on the record: "I have spoken to some of the witnesses that [petitioner] gave me, and I've also spoken to my client about what the witnesses would--the other witnesses would say, your Honor. I am apprised of what they could offer." Although [petitioner] pled facts here that may have warranted relief, the facts are refuted by the record. Specifically, plea counsel's testimony on the record during the plea hearing directly contradicts [petitioner's] allegation. The motion court found that the record refutes [petitioner's] allegation, and this Court agrees. Furthermore, the record reflects that the motion court thoroughly questioned [petitioner] about whether he understood his rights, including the right to trial by jury and waived those rights. [Petitioner] clearly stated on the record that he knowingly and voluntarily pleaded guilty. "When a movant pleads guilty and then affirmatively states in court that he is satisfied with the performance of his trial counsel, he is not then entitled to an evidentiary hearing on a claim that counsel was ineffective for failure investigate, because such claim is refuted by the record." The motion court did not err in denying [petitioner] an evidentiary hearing.

*Jackson v. State*, 366 S.W.3d 656, 660 (Mo. Ct. App. 2012).

On ground (2), the Court of Appeals reversed and remanded for further proceedings:

> The record here reveals that [petitioner] testified his guilty plea was not the result of any threat or promise and he understood he was entering a "blind" guilty plea, which was not the result of a plea bargain. The plea court did not ask [petitioner] whether he was told to lie or withhold information from the court. In claiming that plea counsel told [petitioner] he could not tell the court about plea counsel's promise and that [petitioner] lied to the court when he testified that nobody promised him anything, [Petitioner] has alleged facts which require findings. We reverse and remand for findings on this issue alone.

*Id.* at 661. On remand, the trial court filed findings of fact and conclusions of law on this issue, again denying petitioner's motion for post-conviction relief. *Tommy L. Jackson, Jr. v. State of Missouri*, 10SL-CC04562-01 (St. Louis County Circuit Court, May 13, 2013). Petitioner appealed once more, but the court of appeals affirmed the denial. *Jackson v. State*, 430 S.W.3d 334 (Mo. Ct. App. 2014). Petitioner then filed a motion for rehearing or, in the alternative, an application for transfer to the Supreme Court of Missouri, on June 2, 2014, but it was denied as untimely. *Tommy Jackson, Jr. v. State of Missouri*, ED97122 (Mo. Ct. App. June 5, 2014).

## II. PETITIONER'S GROUNDS FOR FEDERAL HABEAS RELIEF

Approximately six months later, on December 29, 2014, petitioner filed the instant petition for a writ of habeas corpus under 28 U.S.C. § 2254. (ECF No. 1). He alleges that he was denied his constitutional right to effective assistance of counsel when his counsel misrepresented to the trial court that he had interviewed petitioner's witnesses. In support of this argument, petitioner alleges that, in the incident which led to the charges against him, he was taking a shortcut past a known crack cocaine dealer's house, and he had a hood on because it was cold. He alleges that the users of crack cocaine sitting on the porch of the house became paranoid when they saw him walking by, and started yelling about shooting and reaching violently behind chairs. Petitioner alleges he became scared, reached for his gun, closed his eyes, and fired it in self-defense. He

alleges he prepared a list of witnesses that would have testified about their knowledge of the illegal activities that occurred at that house, and "that they have on numerous occasions seen what they would describe as paranoid behavior from occupants of that address, and that they have felt scared a number of times when passing that house because of the yelling and threats from people on the porch." (ECF No. 1 at 16-18).

Petitioner alleges that he asked his counsel to interview these individuals, as well as a toxicologist for testimony about the effects of crack cocaine on a person's state of mind. Petitioner alleges counsel told him and his family that counsel had contacted and interviewed the witnesses on the witness list, but that "the witnesses had turned their backs on him and would not cooperate." (*Id.* at 18-20). Petitioner alleges this caused him to lose hope and desire to proceed to trial; so he entered a guilty plea on the advice of counsel.

According to the transcript of the plea hearing, the trial judge spoke with petitioner's counsel and with petitioner, in part, as follows:

> [The Court to petitioner]: Sir, has anyone made any promises or threats to your or your family to induce you to plead guilty here this morning?
>
> A. No, sir.
>
> Q. Has your attorney refused to comply with any of your requests? Has Mr. Niehoff done the things you asked him to do?
>
> A. Yes, sir.
>
> Q. Has your attorney answered all the questions that you might have had in reference to the allegations pending before this Court?
>
> A. Yes, sir.
>
> Q. Have you been given enough time to discuss your case with your attorney?
>
> A. Yes, sir.

> Q. Do you have any complaints or criticisms of the way Mr. Niehoff has handled this case?
>
> A. No, sir.
>
> Q. Do you know of anything he could have done that he hasn't done?
>
> A. No, sir.
>
> Q. Did you by any chance give Mr. Niehoff a list of witnesses or a name of a witness to speak to in reference to any possible defense to the charges pending before this Court?
>
> A. Yes, sir.
>
> Q. And, Mr. Niehoff?
>
> MR. NIEHOFF: Yes, your Honor.
>
> THE COURT: Were you able to look--
>
> MR. NIEHOFF: I have discussed – I have spoken to some of the witnesses that he gave me, and I've also spoken to my client about what the witnesses would – the other witnesses would say, your Honor. I'm apprised of what they could offer."
>
> [The Court]: Mr. Jackson, do you believe that your attorney has investigated the allegations before this court to your complete satisfaction?
>
> A. Yes, sir.
>
> Q. Do you believe you have been fully advised by your attorney as to all aspects of your case, including your legal rights and possible consequences of your plea?
>
> A. Yes, sir.

(ECF No. 6, Ex. A at 24-25). Petitioner alleges that following the entry of the guilty plea, he and his family learned that counsel had never interviewed the witnesses and had not investigated petitioner's self-defense theory.

Petitioner further alleges that his counsel told him he could get a 10-15 year sentence in front of the right judge, because he did not have a prior criminal record, had obtained his GED, showed remorse, and had not been in trouble while in jail. Counsel informed petitioner that he was friends with a certain judge and filed a motion to have this judge preside over petitioner's case. Counsel told petitioner not to reveal that he had promised petitioner a 10-15 year sentence and told him to answer "No" to any question related to promises made. Petitioner alleges that as an 18-year old defendant, he did not understand how the legal system worked, so he followed all of the instructions of his counsel without understanding them. (ECF No. 1 at 22-23).

Finally, petitioner alleges that the prosecutor mistakenly told his family members immediately before the sentencing hearing that the judge had decided to sentence him to life in prison. The family members discussed this with petitioner's attorney, but the attorney never informed petitioner. Petitioner alleges that had he been informed by his attorney of this, he would not have declined the opportunity to be heard by the court during sentencing, but would have presented mitigating evidence rebutting the characterization of the event as a "gang killing." (*Id.* at 23-25).

From petitioner's allegations the undersigned discerns three alleged grounds for relief in this federal habeas action:

(1) His trial counsel rendered constitutionally ineffective assistance by misrepresenting to petitioner and to the trial court that he had interviewed petitioner's witnesses.

(2) His trial counsel rendered constitutionally ineffective assistance by promising petitioner a 10-15 year sentence based on a friendly relationship with the judge, and then instructing him to deny that any promises had been made.

(3) (a) His trial counsel rendered constitutionally ineffective assistance by failing to inform petitioner that the judge had decided to sentence him to life in prison as soon as he found out, before the sentencing hearing, (b) which effectively denied him the opportunity to present mitigating information to the court during sentencing or seek to withdraw his guilty plea.

(ECF No. 1 at 16-26).

Respondent contends that petitioner's claims are procedurally barred because they are untimely. (ECF No. 6). Respondent further contends that the Missouri state court decisions are entitled to deference and that all of petitioner's claims are meritless. (*Id.*)

### III. EXHAUSTION AND PROCEDURAL BAR

Congress requires that state prisoners exhaust their state law remedies for grounds alleged in federal habeas corpus petitions. *See* 28 U.S.C. § 2254(b)(1)(A). A state prisoner has not exhausted his remedies "if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c).

It is not sufficient for a petitioner simply to have no remaining procedure for bringing a claim to the state court. *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam). A petitioner must have fairly presented the substance of each federal ground to the state trial and appellate courts. *Id.* If he has not done so and he has no remaining state procedure available for doing so, any such ground for federal habeas relief generally is barred from being considered by the federal courts. *King v. Kemna*, 266 F.3d 816, 821 (8th Cir. 2001) (en banc); *Grass v. Reitz*, 643 F.3d 579, 584 (8th Cir. 2011). The doctrine of procedural bar applies whether the default occurred at trial, on appeal, or during state court collateral attack. *See Murray v. Carrier*, 477 U.S. 478, 490–92 (1986).

Petitioner may avoid the procedural bar by demonstrating either that there is a legally sufficient cause for the default and actual prejudice resulting from it, or that failure to review the claim would result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). To establish cause for a procedural default, petitioner must demonstrate that some objective factor external to his case impeded his efforts to comply with the state procedural requirements. *Id.* at 750-53. To establish actual prejudice, petitioner must demonstrate that the alleged errors "worked to his actual and substantial disadvantage, infecting his entire [state court proceedings] with error of constitutional dimensions." *Ivy v. Caspari*, 173 F.3d 1136, 1141 (8th Cir. 1999) (internal citations omitted).

Petitioner raised Grounds 1, 2 and 3(a) in his state court post-conviction relief motions. (ECF No. 1 at 4; Ex. 1 at 2-7). Petitioner's state court remedies on these grounds were exhausted when he appealed their denial to the Missouri Court of Appeals.

However, petitioner has not shown that he raised Ground 3(b) in any previous motion or filing in Missouri state court. He has not presented any legally sufficient reason why he failed to raise this ground in state court, and he has failed to show that this court's failure to consider it would result in a miscarriage of justice. Accordingly, Ground 3(b) has not been exhausted and is procedurally barred.

Nevertheless, if this court concludes that any procedurally barred ground is without merit, Congress has authorized the court to consider it and to dismiss it. 28 U.S.C. § 2254(b)(2).

The undersigned has considered all of petitioner's federal grounds and concludes that they are without merit.

## IV. STATUTE OF LIMITATIONS

Petitioner did not file his federal petition within the statutory limitations period. Congress provides a one-year window, calculated from the conclusion of direct state review, in which a habeas applicant may file a petition for a writ of habeas corpus. 28 U.S.C. § 2244(d)(1). If an inmate does not seek a writ of certiorari in the United States Supreme Court on direct review, direct review concludes when the time limit for seeking further review expires. *Gonzales v. Thaler*, 132 S. Ct. 641, 653-54 (2012). Under Missouri Supreme Court Rules 30.01 and 81.04, the time limit for filing a notice of appeal expires ten days after sentencing. The trial court sentenced petitioner on May 28, 2010; so direct review concluded on June 7, 2010, at which time the one-year clock began to run.

On October 21, 2010, 136 days into the one-year limitations period, petitioner filed a motion for post-conviction relief. *Tommy L. Jackson, Jr. v. State of Missouri*, 10SL-CC04562 (St. Louis County Circuit Court, October 21, 2010). A pending state post-conviction action or other state collateral review tolls the one-year statute of

limitation. 28 U.S.C. § 2244(d)(2). On May 13, 2013, the Missouri circuit court denied petitioner's motion for a second time. *Tommy L. Jackson Jr. v. State of Missouri*, 10 SL-CC04562-01 (St. Louis County Circuit Court, May 13, 2013). The time-limit for appealing that decision expired June 24, 2013. Mo. Sup. Ct. R. 81.04-.05. Petitioner did not properly file a motion for leave to file late notice of appeal until September 20, 2013. Between June 24 and September 20, 2013, there was no properly-filed appeal,[1] and, consequently, no "pending" state judicial action to toll the one-year limitations period. Accordingly, this added another 88 days to the total time that had elapsed since the conclusion of direct review, leaving 142 days for petitioner to file his federal petition.

During the pendency of the second appeal, the one-year period was again tolled, until that appeal concluded on May 30, 2014. *Tommy L. Jackson, Jr. v. State of Missouri*, ED100200 (Mo. App. Ct., May 30, 3014). Petitioner had 142 days from May 30, 2014, to timely file his petition, or until October 19, 2014. However, he did not do so until December 29, 2014, approximately 70 days out of time. (ECF No. 1). Petitioner has not offered any excuse for his late filing. Therefore, petitioner's federal habeas corpus petition is untimely.

The undersigned has nevertheless considered the merits of petitioner's grounds for relief.

## IV. STANDARD OF REVIEW

For petitioner's Grounds 1, 2 and 3(a), which were adjudicated by the Missouri courts, the federal Antiterrorism and Effective Death Penalty Act ("AEDPA") provides that habeas relief may not be granted unless the state court adjudication:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

---

[1] Petitioner filed a notice of appeal on July 1, 2013, with a request that it be filed out of time, but he filed this with the circuit court, not the appellate court, as required by Mo. Sup. Ct. R. 81.07(a). He filed a motion for leave with the appellate court on September 20, 2013, and consequently had not "properly filed" his notice of appeal until that date. *See* 28 U.S.C. § 2244(d)(2); *Artuz v. Vennett*, 531 U.S. 4, 8-9 (2000).

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

A state court's decision is contrary to clearly established federal law if it "arrives at a conclusion opposite to that reached by [the] Court on a question of law or . . . decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Thaler v. Haynes*, 130 S. Ct. 1171, 1174 (2010) (per curiam) (citation omitted). A state court's decision involves an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Thaler*, 130 S. Ct. at 1174. This standard is difficult to meet, because habeas corpus "is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) (citation omitted).

A state court's factual findings are presumed to be correct. 28 U.S.C. § 2254(e)(1); *Wood v. Allen*, 558 U.S. 290, 297 (2010). Review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011). Clear and convincing evidence that factual findings lack evidentiary support is required to grant habeas relief. 28 U.S.C. § 2254(e)(1); *Wood*, 558 U.S. at 297.

For petitioner's Ground 3(b) that was not adjudicated on the merits by a state court the pre-AEDPA standard for habeas review governs. *Gingras v. Weber*, 543 F.3d 1001, 1003 (8th Cir. 2008) ("Because [petitioner's] apparently unexhausted claim was not adjudicated on the merits, we likely should apply the pre-AEDPA standard of review, rather than the deferential standard of 28 U.S.C. § 2254(d).") (internal citations and quotations omitted); *Montes v. Trombley*, 599 F.3d 490, 495 (6th Cir. 2010). Under the pre-AEDPA standard, the habeas petitioner must show a reasonable probability that the error complained of affected the circuit court outcome, or that the outcome likely would

have been different without the now-challenged defect. *Robinson v. Crist*, 278 F.3d 862, 865-66 (8th Cir. 2002).

## V.  DISCUSSION

### A. Ground 1

Petitioner alleges in Ground 1 that his trial counsel rendered constitutionally ineffective assistance by misrepresenting to him and to the trial court that he had interviewed petitioner's witnesses, thereby making the guilty plea involuntary.  In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court determined that the right to effective assistance of counsel arises from the Sixth and Fourteenth Amendments. Under *Strickland*, a petitioner is entitled to federal habeas corpus relief upon a showing that "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686.

First, petitioner must demonstrate that counsel's performance fell below an objective standard of reasonableness. *Id*. at 687–88.  There is a strong presumption that counsel has rendered constitutionally effective assistance. *Id*. at 690; *Blackmon v. White*, 825 F.2d 1263, 1265 (8th Cir. 1987).  Counsel's strategic choices made after thorough investigation are virtually unchallengeable.  *Strickland*, 466 U.S. at 690–91. Additionally, decisions following reasonable, but less thorough, investigation are to be upheld to the extent that they are supported by reasonable judgment.  *Id*.  Specifically, when a defendant pleads guilty on the advice of counsel, "in order to later claim that his plea was involuntary because of some infirmity in the advice," he must demonstrate "that the advice was not within the range of competence demanded of attorneys in criminal cases." *Taylor v. Bowersox*, 329 F.3d 963, 972–73 (8th Cir. 2003) (citations omitted).

Second, petitioner must demonstrate actual prejudice by counsel's deficient performance. *Id*. at 687.  "In other words, in order to satisfy the 'prejudice' requirement, [petitioner] must show that there is a reasonable probability that but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Riley v.*

*United States*, 2017 WL 1187546 at *3 (E.D. Mo. March 29, 2017) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

Petitioner has stated that the reason he pled guilty was because he had lost hope after his plea counsel told him his witnesses were being uncooperative. (ECF No. 1 at 18-20). However, the post-conviction motion hearing court found that the petitioner's counsel was not ineffective for failing to further investigate or call a witness to testify who was unwilling to do so and could not be counted on to give favorable testimony. The motion court also determined that the plea hearing record established that petitioner's plea was knowingly and voluntarily entered. (ECF No. 6, Ex. A at 105-07).

The court of appeals affirmed. It held that the motion court thoroughly questioned petitioner about whether he understood his rights, including the right to trial by jury, and he waived those rights. It found that the record refuted petitioner's allegations on this point, reasoning "[w]hen a movant pleads guilty and then affirmatively states in court that he is satisfied with the performance of his trial counsel, he is not then entitled to an evidentiary hearing on a claim that counsel was ineffective for failure to investigate, because such claim is refuted by the record." *See page 2, above*.

The undersigned cannot conclude that the state courts unreasonably applied federal law in denying petitioner's claim for relief on this point. The transcript of the plea hearing establishes that petitioner was aware that (1) defense counsel had not talked with all of the witnesses and (2) that he could force uncooperative witnesses to testify at trial. (ECF No. 6-1, at 22, 24). Petitioner continued with his plea after acknowledging both of these facts. On this record, petitioner cannot reasonably show that he would not have pleaded guilty but would have insisted on a trial.

Furthermore, petitioner does not allege any specific facts that counsel would have learned through further investigation that would have changed counsel's advice regarding petitioner's case. None of these proposed witnesses were eyewitnesses to the incident, with the exception of a victim injured by petitioner, whose testimony competent counsel might reasonably assume would not be favorable to petitioner. Instead, petitioner argues that the testimony of these witnesses primarily went to the reputation of the victims and

the location where the killing and assault took place. (*Id.* at 75, 79, 93-96). Petitioner argues that other testimony might establish that, because the deceased victim had used cocaine, he had acted in a paranoid and dangerous fashion toward petitioner. It is unclear that any of this evidence would have been admissible at trial and competent counsel could have well concluded that petitioner's best chance at getting a lesser sentence was to enter an open plea.

The motion court found that the record showed petitioner had discussed his witnesses and possible defenses with counsel. The court of appeals held that counsel's acknowledgement that he had not talked to all of petitioner's witnesses, but had discussed their proposed testimony with petitioner, factually refuted petitioner's claim. After counsel's disclosure at the plea hearing, petitioner continued to indicate, on the record, that he wanted to plead guilty and that he was satisfied with counsel's investigation. Accordingly, the state courts did not unreasonably apply established federal law in rejecting petitioner's claim that counsel's representation of him was constitutionally ineffective. The state courts reasonably concluded that petitioner's own statements on the record factually refuted any claim that his plea was involuntary.

Accordingly, Ground 1 is without merit.

**B. Ground 2**

In Ground 2, petitioner argues that his trial counsel rendered constitutionally ineffective assistance by promising him a 10-15 year sentence based on a friendly relationship with the judge, then instructing him to deny that any promises had been made. The same *Strickland* standard discussed above applies to this claim: petitioner must demonstrate both that counsel acted objectively unreasonably and that this incompetence caused him actual prejudice. *Strickland*, 466 U.S. at 668.

Contrary to petitioner's claims, plea counsel testified that he discussed the likely recommended sentences and advised petitioner that his only chance at getting the presumptive sentence of fifteen years would be to enter an open plea. (ECF No. 6, Ex. F at 6-9). Plea counsel also testified that he informed petitioner the recommended

sentences were not binding on the trial court, which could go either above or below the recommended sentences. He testified he did not tell petitioner that he and the trial judge were friends, but did tell petitioner he thought the judge taking the plea was one of the more reasonable judges. He denied making any statement that a fifteen-year sentence was certain or promising any particular sentence, and he denied that he instructed petitioner to lie, if he was asked about any promises. (*Id.* at 10-12). The motion hearing court found plea counsel's testimony credible. (ECF No. 6, Ex. G at 57-58). In light of this testimony, the court denied petitioner's claims on this point. The court of appeals affirmed, finding that petitioner failed to demonstrate error in the motion court's denial of relief.

Under the AEDPA, the state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). Petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. *Id.* He has not done so. Petitioner has simply re-alleged the same or similar facts that the motion court discredited. This court should defer to the state court's findings, which are fairly supported by the record, and which do not entitle petitioner to relief on this point.

Ground 2 is without merit.

**C. Ground 3**

In Ground 3, petitioner argues, first, that his trial counsel rendered constitutionally ineffective assistance by failing to inform him immediately before the sentencing hearing that the judge had decided to sentence him to life in prison, effectively denying him the opportunity to be heard by the court during sentencing. Second, he argues that, had he known the trial court's intent, he would have requested plea counsel to present mitigation evidence regarding the reputation of the location of the shooting as a drug house. On both arguments, petitioner has failed to establish both that his plea counsel rendered ineffective assistance or that he suffered actual prejudice as a result. *Strickland v. Washington*, 466 U.S. at 687.

As the Missouri Court of Appeals noted, the record shows petitioner entered an open plea with the trial court, which was free to impose a life sentence. (ECF No. 6, Ex. A at 18-21, Ex. D at 9-10). The record is clear that the trial court in open court at the sentencing hearing, in petitioner's presence, stated on the record before pronouncing the sentence that the court had met with defense counsel and the prosecutor in chambers and discussed the possible disposition, *i.e.* that the Probation and Parole Office recommended mitigated sentence of 10 years, that the presumptive sentence was 15 years, and that a sentence due to aggravating circumstances was 25 years; that the State recommended life imprisonment with a consecutive 10 years incarceration; and that defense counsel had requested 25 years instead of the life sentence. (ECF No. 6, Ex. A at 28). After this in chambers pre-sentencing conference, defense counsel had only a short time to discuss the matter with petitioner before the hearing started. Even if counsel did not inform petitioner during this short window, in open court before the sentencing the court informed petitioner of the chambers conference and of the potential sentence of life imprisonment. *Id.* After the sentencing court stated the potential sentences, it heard from the victim decedent's family members and from petitioner about his remorse and apology for what he had done. Petitioner did not make any indication during the hearing that he was not ready to proceed or needed a recess to talk with his attorney. (*Id.* at 28-37). The record refutes any claim that petitioner was prejudiced by the failure of his counsel to notify him of the trial court's statements before the sentencing hearing began.

As the court of appeals found, the proposed sentencing disposition was within the trial court's discretion under the open plea, and, therefore, petitioner did not have a valid basis to withdraw his plea before sentencing. (ECF No. 6, Ex. D at 9-10). Petitioner has not demonstrated the existence of any grounds to withdraw his guilty plea that could have been raised at the sentencing hearing other than the claims in Grounds 1 and 2, which the state courts found were meritless. Petitioner fails to show a reasonable probability that any motion to withdraw his guilty plea before sentencing would have been granted.

Petitioner did not argue to the Missouri courts that he would have presented mitigating information had he known of the potential life sentence. He has not provided

a reason to excuse this procedural default. However, the undersigned has nevertheless reviewed it on the merits. Petitioner's argument that counsel should have presented mitigating evidence goes to counsel's strategy in preparing for the sentencing hearing more than counsel's failure to inform petitioner of the court's statements moments before the hearing. Counsel's strategy at the sentencing hearing was to have petitioner apologize for his acts, which he determined would be most likely to get the trial court to follow the presumed sentence. And petitioner did apologize. This strategy was reasonable. A defendant's acceptance of responsibility is a valid factor in determining an appropriate sentence, and a reasonable strategy to take when seeking the mercy of the court. *United States v. O'Brien*, 560 U.S. 218, 227 (2010).

Additionally, petitioner has not shown that his potential sentencing argument—that he was afraid because of the reputation of the location as a drug house—would have altered the sentencing decision.

Ground 3 is without merit.

## VI. CONCLUSION

For the reasons stated above,

**IT IS HEREBY RECOMMENDED** that the petition of Tommy L. Jackson, Jr., for a writ of habeas corpus (ECF No. 1) be denied.

**IT IS FURTHER RECOMMENDED** that because petitioner made no substantial showing that he was deprived of a constitutional right, a certificate of appealability be denied. 28 U.S.C. § 2253(c)(2).

The parties are advised that they have 14 days to file written objections to this Report and Recommendation. The failure to file timely written objections may waive the right to appeal issues of fact.

        /S/   David D. Noce
**UNITED STATES MAGISTRATE JUDGE**

Signed on May 1, 2017.